2016 IL App (1st) 150128

FIRST DIVISION
June 13, 2016

No. 1-15-0128

| | | |
|---|---|---|
| GARY L. BOGENBERGER, as special | ) | Appeal from the |
| Administrator of the Estate of David | ) | Circuit Court of |
| Bogenberger, deceased, | ) | Cook County |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PI KAPPA ALPHA CORPORATION, INC., a | ) | |
| Corporation; PI KAPPA ALPHA | ) | |
| INTERNATIONAL FRATERNITY, an | ) | |
| Unincorporated Association; ETA NU CHAPTER | ) | |
| OF PI KAPPA ALPHA INTERNATIONAL | ) | |
| FRATERNITY AT NORTHERN ILLINOIS, an | ) | |
| Unincorporated Association; ALEXANDER M. | ) | |
| JANDICK, individually and as an officer of Eta | ) | |
| Nu Chapter of Pi Kappa Alpha | ) | |
| International Fraternity at | ) | |
| Northern Illinois University; JAMES P. | ) | No. 2013 L 1616 |
| HARVEY, Individually and as an Officer of Pi | ) | |
| Kappa Alpha Eta Nu Chapter; OMAR | ) | |
| SALAMEH, Individually and as an Officer of Pi | ) | |
| Kappa Alpha Eta Nu Chapter; PATRICK | ) | |
| W. MERRILL, Individually and as an Officer of | ) | |
| Eta Nu Chapter of Pi Kappa Alpha | ) | |
| Fraternity at Northern Illinois | ) | |
| University; STEVEN A. LIBERT, Individually | ) | |
| and as an Officer of Pi Kappa Alpha Eta Nu | ) | |
| Chapter; JOHN HUTCHINSON, Individually | ) | |
| and as an Officer of Pi Kappa Alpha Eta Nu | ) | |
| Chapter; DANIEL BIAGINI, Individually and as | ) | |
| an Officer of Pi Kappa Alpha Eta Nu | ) | |
| Chapter; MICHAEL J. PHILLIP, JR.; THOMAS | ) | |
| F. COSTELLO; DAVID R. SAILER; | ) | |
| ALEXANDER D. RENN; MICHAEL A. | ) | |
| MARROQUIN; ESTEFAN A. DIAZ; HAZEL A. | ) | |
| VERGARALOPE; MICHAEL D. PFEST; ANDRES | ) | |
| J. JIMENEZ, JR.; ISAIAH LOTT; ANDREW W. | ) | |

BOULEANU; NICHOLAS A. SUTOR; NELSON )
A. IRIZARRY; JOHNNY P. WALLACE; DANIEL )
S. POST; NSENZI K. SALASINI; RUSSELL P. )
COYNER; GREGORY PETRYKA; KEVIN )
ROSSETTI; THOMAS BRALIS; ALYSSA )
ALLEGRETTI; JESSICA ANDERS; KELLY )
BURBACK; CHRISTINA CARRISA; RAQUEL )
CHAVEZ; LINDSEY FRANK; DANIELLE )
GLENNON; KRISTINA KUNZ; JANET LUNA; )
NICHOLE MINNICK; COURTNEY ODENTHAL;)
LOGAN REDFIELD; KATIE REPORTO; )
TIFFANY SCHEINFURTH; ADRIANNA )
SOTELO; PRUDENCE WILLRET; KARISSA )
AZARELA; MEGAN LEDONE; NICHOLE )
MANFREDINI; JILLIAN MERRIL; MONICA )
SKOWRON; and PIKE ALUM, L.L.C., )    Honorable
                                               )    Kathy M. Flanagan,
      Defendants-Appellees.         )    Judge Presiding.

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham concurred in the judgment and opinion.
Justice Connors specially concurred.

## OPINION

¶ 1     Plaintiff, Gary L. Bogenberger as special administrator of the estate of David Bogenberger, appeals the order of the circuit court granting a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West (2012)) in favor of defendants Pi Kappa Alpha Corporation, Inc., *et al*, on plaintiff's negligence complaint. On appeal, plaintiff contends the court erred in dismissing his complaint because (1) it stated a cause of action where the facts alleged that David's death resulted from his required participation in a fraternity event and actions that violated the Criminal Code of 2012 (Hazing Act) (720 ILCS 5/12C-50 (West 2012)); (2) it stated a cause of action showing that defendants voluntarily undertook the duty to care for intoxicated pledges; (3) it stated a cause of action as to the nonmember participants because they were recruited by the fraternity to participate in the hazing;

and (4) it stated a cause of action as to the landlord of the premises because the landlord was aware of the hazing activity. For the following reasons, we reverse the dismissal as to defendants Eta Nu Chapter of Pi Kappa Alpha International Fraternity at Northern Illinois, the named executive officers and pledge board members of the Eta Nu Chapter of Pi Kappa Alpha, and named active fraternity members. However, we affirm the dismissal as to Pi Kappa Alpha Corporation, Inc. (PKA Corp.), Pi Kappa Alpha International Fraternity (PKA International), the nonmember defendants, and Pike Alum, L.L.C. (Pike Alum).

¶ 2                                  JURISDICTION

¶ 3    The trial court entered its order dismissing plaintiff's complaint on December 12, 2014, *nunc pro tunc* to December 11, 2014. Plaintiff filed his notice of appeal on January 9, 2015. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. May 30, 2008) governing appeals from final judgments entered below.

¶ 4                                  BACKGROUND

¶ 5    Plaintiff's son, David Bogenberger, was a prospective pledge of Pi Kappa Alpha fraternity at Northern Illinois University (NIU). While participating in a fraternity event David became intoxicated, lost consciousness, and subsequently died. Plaintiff, as special administrator of David's estate, filed a four-count negligence complaint seeking recovery under the Wrongful Death Act (740 ILCS 180/1 *et seq*. (West 2012)) and the Survival Act (755 ILCS 5/27-6 (West 2012)). Pursuant to subpoenas issued to the De Kalb police department, De Kalb county State's attorney's office, and the NIU police department, plaintiff filed a 10-count amended complaint. Defendants filed a section 2-615 motion to dismiss, which the trial court granted because although plaintiff alleged that pledges were required to consume an excessive amount of alcohol to obtain membership in the fraternity, plaintiff did not plead specific facts to

trigger social host liability under Illinois law. The trial court gave plaintiff leave to file a second amended complaint.

¶ 6 Plaintiff filed a second and third-amended complaint, which the trial court again dismissed pursuant to section 2-615. The trial court, however, gave plaintiff leave to file a fourth-amended complaint. Before filing the complaint, plaintiff filed motions to clarify the trial court's ruling and to conduct discovery. The trial court denied plaintiff's motion to clarify and plaintiff, in response to the trial court's grant of defendants' motions for a protective order and to quash deposition notices, withdrew his motion to conduct discovery. Plaintiff then filed a fourth-amended complaint, and defendants filed a motion to dismiss. While defendants' motion was pending, plaintiff requested leave to file a fifth-amended complaint which the trial court granted.

¶ 7 Plaintiff's twelve-count, fifth-amended complaint alleged that upon information and belief, employees or agents of PKA Corp. and/or PKA International encouraged officers and/or active members of the Eta Nu chapter at NIU to hold "Greek Family Night" events as part of the pledging process. The complaint alleged that the pledging process consisted of fraternity events designed to familiarize fraternity members with potential new members (pledges) before they vote on whether to initiate a pledge into the fraternity. It alleged that the executive officers of the Eta Nu chapter, as well as members of the pledge board and other active members, planned a "Mom and Dad's Night" pledge event to be held at their fraternity house on November 1, 2012.

¶ 8 The complaint alleged that the event called for two or three "Greek couples" assigned to each of the designated seven rooms in the fraternity to ask pledges various questions and give each pledge a required amount of alcohol. Women in sororities were contacted to be the "Greek Mothers" at the event. Active members of the fraternity participating in the event

- 4 -

selected a pledge for whom he and a designated woman would be the pledge's "Greek Mother and Father." The executive officers had breathalyzers to monitor the blood alcohol content of the pledges. The pledges were informed that attendance and participation in "Mom and Dad's Night" was mandatory. The complaint alleged that upon information and belief, David and the other pledges believed that attendance and participation in "Mom and Dad's Night" was a required condition for being initiated into the fraternity. The event was not registered with, or otherwise sanctioned by, NIU.

¶ 9    On November 1, 2012, David and other pledges arrived at the fraternity house, were divided into groups of two or three, and given a list of rooms in the house to enter following a designated order. Each pledge was given a four-ounce plastic cup which he brought with him to each room he visited. At each room, the pledges were asked questions and no matter their responses were required to consume vodka given by the active members and women in the room. If pledges showed reluctance to drink, the active members and women would call them "pussies" and "bitches" until they drank. After progressing through the seven rooms, each pledge had consumed three to five glasses of vodka in each room within one and a half hours. With assistance from the active members and sorority women participating, because they could no longer walk on their own, the pledges were then taken to the basement of the fraternity house where they were told the identity of their Greek parents, and given t-shirts, paddles, and buckets in which to vomit.

¶ 10    The complaint alleged that the pledges "vomited on themselves, each other, in rooms and on hallway floors." They also began to lose consciousness. Members of the fraternity placed the pledges in designated places throughout the fraternity house, and member Gregory Petryka put David into his Greek father's room. The complaint alleged that Petryka tried to orient

David's "head and body so that if he vomited, he would not choke on it." Executive officers Alexander M. Jandick and Patrick W. Merrill sent a mass text to other officers and active members stating, "if you or any girl you know has a pic or vid of a passed out pledge delete it immediately. Just do it." Upon information and belief, officers and active members checked on the pledges occasionally and adjusted their positions so they would not choke. After the pledges lost consciousness, the active members and officers decided to instruct members not to call 911 or seek medical care for them. David subsequently died with a blood alcohol level of .43 mg./dl.

¶ 11 Counts I and II of the complaint are directed at PKA Corp. and PKA International; counts III and IV are directed at Eta Nu chapter at NIU and the named seven officers; counts V and VI are directed at named pledge board members; counts VII and VIII are directed at named active members of the fraternity who participated in the event; counts IX and X are directed at named, nonmember women who participated in the event; and counts XI and XII are directed at the owner of the premises where the event occurred, Pike Alum. For brevity and clarity purposes, we will discuss the specific allegations of each count as it becomes relevant to our disposition of the case.

¶ 12 Defendants filed a section 2-615 motion to dismiss. On December 11, 2014, the trial court issued its order dismissing plaintiff's complaint. The trial court acknowledged that *Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity*, 155 Ill. App 3d 231 (1987), and *Haben v. Anderson*, 232 Ill. App. 3d 260 (1992), held that a complaint states a cause of action if it alleges that the plaintiff was required to drink to intoxication to become a member, and the conduct violated the Hazing Act. However, it questioned the viability of those cases after the supreme court's decision in *Charles v. Seigfried*, 165 Ill. 2d 482 (1995), given the breadth and scope of the

holding in *Charles*. The trial court also found that plaintiff's allegations were conclusory and lacked factual specificity as to all defendants. Further, as to the nonmember women defendants, the trial court found that the Hazing Act did not apply to nonmembers of an organization. Since plaintiff had five opportunities to state a claim, the trial court determined that "it does not appear likely that [he] will be able to properly state a cause of action against these Defendants." The trial court therefore dismissed the complaint with prejudice. On December 12, 2014, the trial court issued an amended order, *nunc pro tunc* to December 11, 2014, to include other defendants. Plaintiff filed this timely appeal.

¶ 13                                        ANALYSIS

¶ 14    On appeal, plaintiff first contends that the trial court erred in dismissing his negligence complaint where the facts alleged that David's death resulted from his required participation in a fraternity event and the actions violated the Hazing Act. Defendants argue that dismissal was proper because plaintiff's claim is based on social host liability and Illinois common law does not recognize a duty owed by social hosts in serving alcohol to their guests.

¶ 15    To prevail on a negligence claim, plaintiff must show that defendants owed a duty, they breached their duty, and the defendants' breach was the proximate cause of injury. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). If no duty is owed to plaintiff, plaintiff cannot recover in tort for negligence. *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992). Whether a duty exists is a question of law for courts to decide. *Krywin*, 238 Ill. 2d at 226. The question before us is whether defendants owed a duty to David where David was required to consume excessive amounts of alcohol as part of a fraternity pledging activity, and he subsequently died as a result of his excessive alcohol

consumption. To make this determination, we examine Illinois common law and legislation regarding alcohol-related liability.

¶ 16    Our supreme court has repeatedly recognized the common law rule in Illinois that no cause of action exists for injuries arising out of the sale or gift of alcoholic beverages. *Charles v. Seigfried*, 165 Ill. 2d 482, 486 (1995). The reasoning behind the rule is that the drinking of the alcohol, not the selling or serving of it, is the proximate cause of intoxication and resulting injury. *Id*. However, the Illinois legislature "created a limited statutory cause of action when it enacted the original Dramshop Act of 1872" (Dramshop Act). *Id*. The act imposed a form of no-fault liability on dramshops for selling or serving intoxicating beverages to individuals who subsequently injure third parties. [1] *Id*. at 487. In *Cruse v. Aden*, 127 Ill. 231 (1889), the supreme court refused to extend liability under the Dramshop Act to social hosts who give "a glass of intoxicating liquor to a friend as a mere act of courtesy and politeness." Relying on principles underlying the common law rule, the court reasoned that it was not a tort at common law to give alcoholic beverages to " 'a strong and able-bodied man' " and therefore a claim based on social host liability "can in no sense be regarded as an action of tort at common law." *Id*. at 234.

¶ 17    Other cases since *Cruse* tested its broad holding that no social host liability exists for alcohol-related injuries. In *Cunningham v. Brown*, 22 Ill. 2d 23, 24 (1961), the supreme court considered whether to recognize a common law remedy allowing recovery against a tavern where plaintiff's decedent, who became despondent after being served alcohol, subsequently took his own life. Since legislation provided remedies against tavern owners only for third party

---

[1] The act in its present incarnation, the Liquor Control Act of 1934 (Liquor Control Act) (235 ILCS 5/6-21 (West 2010)), grants to third parties a similar cause of action.

injuries caused by an intoxicated person, the plaintiff could not recover under the Liquor Control Act. The plaintiff also acknowledged that the common law provided no remedy for the mere sale of alcohol to a person because it is the drinking, not the selling, of alcohol that is the proximate cause of intoxication. *Id*. at 30. However, the plaintiff argued for an exception to the common law rule, reasoning that "where a sale is made to one who is intoxicated or insane and the incapacity of the consumer to choose [to drink] is known to the vendor *** then the sale and consumption are merged and in reality become the act of the seller and the proximate cause of the intoxication." *Id*.

¶ 18 The supreme court in *Cunningham* acknowledged that "plaintiff's argument has some merit, and if no more were involved than laying down a new rule of liability it would warrant more serious consideration." *Id*. Instead, the legislature through the Liquor Control Act had provided a remedy against tavern owners for alcohol-related injuries and the supreme court was unwilling to create a common law remedy that would be "almost coincidental with the remedy provided" by the Liquor Control Act. *Id*. Therefore, it held that "the Liquor Control Act provides the only remedy against tavern operators and owners of tavern premises for injuries to person, property or means of support by an intoxicated person or in consequence of intoxication." *Id*. at 30-31.

¶ 19 In *Charles*, the supreme court considered whether an exception to the common law rule exists where social hosts knowingly serve alcohol to minors who become intoxicated and suffer serious injury or death as a result. *Charles*, 165 Ill. 2d at 484. Prior to its analysis, the supreme court strongly emphasized the continued validity of the common law rule and its intent to adhere to "well-established law." *Id*. at 486. It stated that "[f]or over one century, this court has spoken with a single voice to the effect that no social host liability exists in Illinois" and that

"no common law cause of action for injuries arising out of the sale or gift of alcoholic beverages" exists. *Id.* The supreme court proceeded to outline the history of the common law rule regarding social host liability, including discussions of *Cruse* and *Cunningham*. It noted its holding in *Cunningham* that the Dramshop Act provides the exclusive remedy against tavern owners and operators for alcohol-induced injuries, and determined that *Cunningham* "firmly established the rule of law that, in Illinois, the General Assembly has preempted the entire field of alcohol-related liability through its passage and continual amendment of the Dramshop Act." *Id.* at 488-89. In *Charles*, the supreme court determined that this "[l]egislative preemption in the field of alcohol-related liability extends to social hosts who provide alcoholic beverages to another person, whether that person be an adult, an underage person, or a minor." *Id.* at 491. Therefore, it held that no common law cause of action exists where a social host serves alcohol to minors; in other words, social hosts owe no duty to minors under the common law when serving them alcohol. *Id.*

¶ 20 *Charles* also discussed public policy reasons for leaving this issue in the hands of the legislature rather than with the courts, finding that the legislature, "by its very nature, has a superior ability to gather and synthesize data pertinent to the issue." *Id.* at 493. It noted the difficulty courts would face in determining social host liability amid the multiple parties who could be held liable, and in defining liability so as to avoid a "flood of injured litigants" from crowding the courts. *Id.* at 494. The court expressed concern that by creating this exception to the common law rule, liability for social hosts who merely serve alcoholic beverages to guests in their home "would be unlimited" whereas the Dramshop Act limits liability for liquor vendors for each compensable injury. *Id.* The supreme court further noted that review of the Liquor Control Act's legislative history showed that "the General Assembly has deliberately chosen *not*

to impose social host liability upon adults who provide alcoholic beverages to persons under the legal drinking age." (Emphasis in original.) *Id* at 501. It concluded that "[j]udicial action in the face of these legislative decisions would be ill-advised." *Id*.

¶ 21 Plaintiff here challenges the applicability of *Charles*, arguing that this is not a social host case and that his cause of action is more in line with the claims in *Quinn* and *Haben*. In *Quinn*, the complaint alleged that the plaintiff, an 18-year-old pledge of the defendant fraternity, was required to participate in an initiation ceremony. *Quinn*, 155 Ill. App. 3d at 233. The ceremony involved members directing each pledge to drink a 40-ounce pitcher of beer without letting the pitcher leave the pledge's lips or until the pledge vomited. The plaintiff complied, became intoxicated and could not properly care for himself. After drinking the pitchers, the pledges went to a tavern where an active member directed the plaintiff to drink from an 8-ounce bottle of whiskey. The plaintiff complied although the complaint did not specify the amount he drank from the bottle. At the tavern, the active members purchased more alcohol for the pledges. *Id*. at 233-34.

¶ 22 The complaint alleged that as a result of this excessive drinking, the plaintiff "became extremely intoxicated" and after being brought back to the fraternity, he was left on the hardwood floor to sleep off his intoxication. When he awoke, the plaintiff found he could not use his hands or arms properly and was taken to the hospital. His blood alcohol level, measured almost 15 hours after he had fallen asleep at the fraternity, registered at .25. The plaintiff alleged that as a result of his extreme intoxication, he suffered neurological damage to his arms and hands. *Id*. at 234.

¶ 23 The question before the appellate court was whether a fraternity owed a common law duty to its pledge where the pledge was required to consume an excessive amount of alcohol, and

he then became intoxicated and suffered neurological damage as a result.  *Id*. at 233-34.   The court acknowledged that to recognize a cause of action in negligence in this case would put the decision "perilously close to the extensive case law prohibiting common law causes of action for negligently selling alcohol."  *Id*. at 235.   However, the *Quinn* court was careful to point out that the facts in the complaint alleged something more than the mere furnishing of alcohol.  *Id*. at 237.   Instead, the situation consisted of a "fraternity function where [the] plaintiff was required to drink to intoxication in order to become a member of the fraternity" and as a result the plaintiff's blood alcohol level was " 'at or near fatal levels.' "  *Id*.   Although the plaintiff could have voluntarily walked away from the fraternity, the complaint alleged that fraternity membership was a " 'much valued   status' " that perhaps blinded him "to any dangers he might face."  *Id*.   The court also considered the nature of the duty and found that the alleged injury was foreseeable, the burden on defendant to guard against the injury was small, and that the burden is properly on the fraternity since it was in control of the activities requiring pledge participation.  *Id*. at 237.   Therefore, the court recognized a cause of action in negligence for injuries sustained by pledges who were required to participate in "illegal and very dangerous activities" to obtain fraternity membership.  *Id*.

¶ 24    The *Quinn* court cautioned, however, that this duty should be construed narrowly and that it was basing its decision on two factors.  *Id*.   First, the fact that the plaintiff was required to drink to intoxication, via social pressure to comply with initiation requirements, placed him in a position of being coerced that is distinguishable from the social host-guest context.  *Id*. at 237-38.   Second, the legislature enacted the Hazing Act to protect persons like the plaintiff from embarrassing or endangering themselves through thoughtless and meaningless activity.   A

violation of the Hazing Act, or any statute "designed for the protection of human life or property is *prima facie* evidence of negligence." (Internal quotation marks omitted.) *Id*.

¶ 25 In *Haben*, the third district extended *Quinn* to recognize a cause of action in negligence against members of the Western Illinois University Lacrosse Club where the plaintiff's 18-year-old decedent sought membership in the high-status club, and the initiation ceremony traditionally included hazing activities and excessive drinking. *Haben*, 232 Ill. App. 3d at 262-63. The court saw no reason to limit *Quinn* to organizations, and although the plaintiff did not allege that the decedent was required to drink alcohol, he did allege that excessive drinking was a *de facto* requirement that came into existence through years of tradition. *Id*. at 266-67.

¶ 26 *Quinn* and *Haben* determined that a situation where a person is required by those "serving" alcohol to consume excessive amounts in order to become members of an exclusive, highly valued organization is not a social host situation, and therefore the organization owes that person a duty to protect him from engaging in harmful and illegal activities. These cases are factually on point with the case before us. Like *Quinn* and *Haben*, plaintiff here alleged that David was required to drink excessive amounts of alcohol in order to obtain membership in a highly valued organization, the Eta Nu chapter of the Pi Kappa Alpha fraternity. He also alleged that pledges faced social pressure to comply with the fraternity's requests and that participation in such activity violated the Hazing Act. See *Quinn*, 155 Ill. App. 3d at 237-38. Following *Quinn* and *Haben*, we find that we are not presented with a social host situation here and plaintiff has alleged a duty on which a cause of action for common law negligence can be based.

¶ 27 Defendants disagree, arguing that *Charles*, which was decided after *Quinn* and *Haben*, and the subsequent supreme court case *Wakulich v. Mraz*, 203 Ill. 2d 223 (2003), effectively

overruled those appellate cases even if the supreme court did not explicitly overrule them. They point to language in *Charles* finding "that the General Assembly has preempted the entire field of alcohol-related liability through its passage and continual amendment of the Dramshop Act." *Charles*, 165 Ill. 2d at 491. Defendants argue that the appellate court in *Wakulich* noted this language in *Charles* and concluded that the "exception" created by *Quinn* did not survive *Charles*. *Wakulich v. Mraz*, 322 Ill. App. 3d 768, 773 (2001). In affirming the dismissal of plaintiff's claim in *Wakulich*, our supreme court adhered to its decision in *Charles* that no social host liability exists in Illinois, even where the host serves alcohol to a minor who subsequently suffers an injury. *Wakulich*, 203 Ill. 2d at 237. The court in *Wakulich* also reiterated its belief that the General Assembly is the body best equipped to determine social host liability issues. *Id*. at 235-36.

¶ 28 Defendants further argue that in response to *Wakulich*, the General Assembly passed the Drug or Alcohol Impaired Minor Responsibility Act (740 ILCS 58/1 *et seq*. (West 2012)), which created a civil cause of action when a person over 18 years of age "willfully supplies" alcohol or illegal drugs to minors who injure themselves or a third party. They contend that this legislative action indicates the General Assembly's desire to preempt the entire field of alcohol related liability, as our supreme court held in *Charles* and *Wakulich*, and because the legislature has been silent regarding the service of alcohol to a person over the age of 18 on the facts we have here, plaintiff has no claim.

¶ 29 We agree with defendants that our supreme court in *Charles* and *Wakulich* held that social host liability does not exist in Illinois common law. However, we disagree with defendants' characterization of plaintiff's claim as one based on social host liability. As the appellate court found in *Quinn*, here "we are faced with a situation which consists of more than

the mere furnishing of alcohol. The facts, as alleged in plaintiff's amended complaint, describe a fraternity function where plaintiff was required to drink to intoxication in order to become a member of the fraternity." *Quinn*, 155 Ill. App. 3d at 237. We agree with *Quinn* that this situation is distinguishable from the social host circumstances found in *Charles*, *Wakulich*, and other social host liability cases.

¶ 30    Furthermore, we do not agree that *Charles* and *Wakulich* effectively overruled *Quinn* and *Haben*. When our supreme court discussed preemption in *Charles*, finding that the "General Assembly has preempted the entire field of alcohol-related liability through its passage and continual amendment of the Dramshop Act," it was referring to *Cunningham*, a case involving tavern owners serving alcohol to a paying customer. *Charles*, 165 Ill. 2d at 488-89. The plaintiff in *Charles*, however, alleged improper service of alcohol to a minor in the host's home. Throughout its opinion our supreme court referred to this as social host liability. The court then held that "[l]egislative preemption in the field of alcohol-related liability extends to social hosts who provide alcoholic beverages to another person, whether that person be an adult, an underage person, or a minor." *Id*. at 491. *Charles* did not provide a definition for social host.

¶ 31    Our supreme court revisited the issue in *Wakulich*, another social host liability case involving the service of alcohol to a minor. In *Wakulich*, the court refused to overturn *Charles* and adhered to its decision that "apart from the limited civil liability provided in the Dramshop Act, there exists no social host liability in Illinois." *Wakulich*, 203 Ill. 2d at 237. The court did provide a general definition of "adult social hosts" in the context of the facts before it as "persons 18 years of age and older who knowingly serve alcohol to a minor." *Id*. at 230. However, our supreme court provided no further analysis on the issue.

¶ 32     In fact, contrary to defendants' assertion that our supreme court effectively overruled *Quinn* and *Haben*, thereby extending the definition of social host to fraternities and members who plan an event where pledges are required to consume dangerous amounts of alcohol, *Wakulich* instead shows the court's acknowledgement that this situation is a "factually distinct scenario" from one in which a minor is allegedly pressured to drink at a private residence.  *Id*. at 240.   Although the appellate court in *Wakulich* concluded that "the liability exception created by *Quinn*" did not survive *Charles*, our supreme court in affirming the dismissal in *Wakulich* did not make the same determination.  *Wakulich*, 322 Ill. App. 3d at 773.   Rather, our supreme court noted the lower court's conclusion but found it "unnecessary to consider whether the so-called 'exception' to the rule against social host liability recognized by *Quinn* and *Haben* is compatible with our decision in *Charles* because the present case simply does not come within the reach of these two appellate opinions."   *Wakulich*, 203 Ill. 2d at 239.   The court recognized that *Quinn* and *Haben* "addressed the limited situation" of illegal or dangerous activities conducted by college fraternities or similar organizations, and that to extend their holdings to a case involving the service of alcohol to a minor at a residence would be a  " 'dramatic expansion' " of those cases, "assuming their continuing viability."  *Id*. at 240.   Our supreme court did not conclusively state that it was overruling *Quinn* and *Haben*, but instead determined that the facts before it were distinguishable from the facts of those appellate opinions.   Neither the supreme court nor the General Assembly have conclusively determined otherwise.   We find that the holdings in *Quinn* and *Haben* are still viable and, following those factually on-point cases, we hold that plaintiff here has sufficiently alleged a common law cause of action in negligence.

¶ 33    Plaintiff, however, must still allege sufficient facts to support his negligence claim or face a section 2-615 dismissal upon defendants' motion.   A section 2-615 motion to dismiss challenges the sufficiency of the complaint based on defects apparent on its face.   *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13.   In reviewing the sufficiency of a complaint, we take as true all well-pleaded facts and all reasonable inferences drawn from those facts. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97 (2004).   We also view the allegations in the complaint in the light most favorable to the plaintiff.   *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12 (2005).   Plaintiff, however, must allege sufficient facts to bring the claim within a legal cause of action.   *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

¶ 34    We recognize that a number of allegations in the complaint are made "upon information and belief."   "Where facts of necessity are within defendant's knowledge and not within plaintiff's knowledge, a complaint which is as complete as the nature of the case allows is sufficient."   *Yuretich v. Sole*, 259 Ill. Ap. 3d 311, 313 (1994).   This court has acknowledged that " '[a]n allegation made on information and belief is not equivalent to an allegation of relevant fact' [citation], but at the pleading stage a plaintiff will not have the benefit of discovery tools" to discern certain facts.   *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40.   However, plaintiff will have knowledge of how he learned of the facts alleged upon information and belief, and the complaint therefore should allege how those facts were discovered.   *Id.*   Here, plaintiff's counsel attached an affidavit to the complaint stating that the allegations made " 'upon information and belief' are based on [his] reading of various summary reports, recorded witness statements and media reports."   The affidavit also states that due to pending criminal proceedings, counsel does not have access to certain defendants and unindicted

witnesses requiring him to allege certain facts and conduct as "presently unknown." The use of "upon information and belief" in plaintiff's complaint here does not render the allegations insufficient under section 2-615.

¶ 35    We now consider the merits of plaintiff's appeal.   We review *de novo* the trial court's dismissal of a claim under section 2-615.   *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).   For clarity, we will address the sufficiency of plaintiff's pleadings for each group of defendants specified in the complaint.

¶ 36    We first consider plaintiff's allegations against the named officers and pledge board members, individually and as officers and pledge board members (counts V, VI), and the active members (counts VII, VIII).   The complaint alleged that the officers and pledge board members of the Eta Nu chapter met on October 29 or 30, 2012, and planned and approved of Mom and Dad's night as a pledge event in which participation was required as a condition of membership. On November 1, 2012, these defendants participated in the event which required pledges to visit a list of rooms in the fraternity house.   The pledges were given a four-ounce plastic cup by the officers and board members, and in each room the cup was filled with vodka.   The participating active members and women in each room asked each pledge a series of questions and after responding the pledges were required to drink from his cup of vodka.   The complaint alleged that after progressing through the rooms, each pledge had consumed three to five glasses of vodka in each room in approximately one and a half hours.   It further alleged that the event was not sanctioned by NIU and violated the Hazing Act.[2]

---

[2] The Hazing Act defines hazing as when a person "knowingly requires the performance of any act by a student or other person in a school, college, university or other educational institution of this State, for the purpose of induction or admission into any group, organization, or society associated or connected with that institution" if not sanctioned by the institution and results in

¶ 37     We find that plaintiff's complaint alleged sufficient facts to support his claim that David was required to drink to extreme intoxication in order to become a member of the fraternity, and that this conduct violates the Hazing Act.   See *Quinn*, 155 Ill. App. 3d at 237-38.   The complaint specifically pled that the named officers and pledge board members of the Eta Nu chapter planned the event and required participation by the pledges, and details how their actions and decisions led to David's intoxication.   Taking as true all well-pleaded facts and all reasonable inferences drawn therefrom, plaintiff has alleged sufficient facts to bring his claim within a legal cause of action as to these defendants.

¶ 38     Plaintiff also alleged liability premised on the breach of defendants' duty of due care that arose when they voluntarily undertook to care for the unconscious pledges.   In undertaking the care of the pledges, defendants "were obligated to exercise 'due care' in the performance of the undertaking."   *Wakulich*, 203 Ill. 2d at 242.   As stated in section 323(a) of the Restatement (Second) of Torts, liability attaches upon defendants' failure to exercise reasonable care in performing a voluntary undertaking if "his failure to exercise such care increases the risk of such harm."   Restatement (Second) of Torts § 323(a), at 135 (1965).   In *Wakulich*, the plaintiff alleged that the defendants took the minor to the family room for observation after she lost consciousness, observed her vomiting and making gurgling sounds, checked on her the following morning when she was still unconscious, removed her soiled blouse, and placed a pillow under her head to prevent aspiration.   They refused to seek medical care and prevented others from obtaining medical care for her.   They also refused to take her home or contact her parents.   When she was still unconscious, defendants removed the minor from their home.   *Wakulich*, 203 Ill. 2d at 241.   Our supreme court found that plaintiff's allegations sufficiently alleged that

---

bodily harm to any person.    720 ILCS 5/12C-50 (West 2012).

their conduct increased the risk of harm to her, and the trial court should not have dismissed the counts based on a voluntary undertaking theory. *Id*. at 247.

¶ 39 This duty, however, is limited by the extent of the undertaking. *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992). Although it may be true as a general proposition that a host who merely allows an intoxicated guest to "sleep it off" on the floor does not assume an open-ended duty of care, plaintiff's complaint alleged more than merely allowing pledges to "sleep it off." See *Wakulich*, 203 Ill. 2d at 243. The complaint alleged that as the pledges began to lose consciousness, "presently unknown active members" placed them in designated areas throughout the fraternity house. David was placed in a bed where active members tried to orient his head and body so he would not choke on his vomit. Active members occasionally checked on the unconscious pledges and would adjust their positions so they would not choke if they vomited. The complaint alleged that unknown officers and active members discussed whether to seek medical attention for the pledges, but decided not to and told others not to seek medical care or call 911. According to the allegations, defendants effectively took complete charge of the pledges, including David, after they become unconscious. Liberally construed and taken as true, these allegations sufficiently plead a cause of action based on a voluntary undertaking theory.

¶ 40 Plaintiff has also sufficiently pled a cause of action against the Eta Nu chapter of PKA (counts III and IV), since the elected officers and pledge board members of the Eta Nu chapter were acting within the scope of their authority in planning and executing the event. See *First Chicago v. Industrial Comm'n*, 294 Ill. App. 3d 685, 691 (1998) (corporate entities are bound by the actions of their officers and directors if performed within the scope of their authority). We are mindful that at this stage, we consider only whether plaintiff sufficiently pled facts to support

his claim of negligence. Whether defendants actually required that David and other pledges consume excessive amounts of alcohol for membership into the fraternity, whether the pledges actually felt intense pressure to drink, and whether defendants actually took affirmative measures to care for the unconscious pledges are questions for the trier of fact to decide. As the courts in *Quinn* and *Haben* noted, "[t]o the extent that plaintiff acted willingly, liability can be transferred to him under principles of comparative negligence." *Quinn*, 155 Ill. App. 3d at 237. Although we find that the trial court erred in granting the motion to dismiss on counts III, IV, V, VI, VII, and VIII, we make no determination as to defendants' actual liability.

¶ 41    Next we consider counts I and II, which pertain to defendants PKA Corp. and PKA International. Although plaintiff does not explicitly state that he seeks recovery based on both a direct theory of negligence as well as on a theory of vicarious liability, the language used in these counts appears to reference both theories of liability. Therefore, we will consider whether plaintiff's pleadings sufficiently alleged facts to support both theories of liability.

¶ 42    Under a theory of vicarious liability, or *respondeat superior*, a principal can be held liable for the negligent conduct of an agent acting within the scope of his or her agency. *Adames v. Sheahan*, 233 Ill. 2d 276, 298 (2009). The agent's liability is thereby imputed to the principal and generally the plaintiff need not establish malfeasance on the part of the principal. *Vancura v. Katris*, 238 Ill. 2d 352, 375 (2010). Plaintiff's complaint here alleged that PKA Corp. and PKA International, "through its agents and employees encouraged local chapters, including Eta Nu, to hold events similar to 'Mom and Dad's Night' because they were good for member and pledge retention." However, the complaint also alleged that PKA Corp. and PKA International established a hazing policy precluding a "chapter, colony, student or alumnus" from conducting or condoning hazing activities defined as "[a]ny action taken or situation created,

intentionally, whether on or off fraternity premises, to produce mental or physical discomfort, embarrassment, harassment, or ridicule." The policy also stated that hazing activities may include, but are not limited to, the use of alcohol. Plaintiff alleged that David's death resulted from his participation in a pledging event in which agents of PKA Corp. and PKA International, the officers and pledge board members of the Eta Nu chapter of the fraternity, required pledges to consume excessive amounts of alcohol to the point of intoxication. PKA Corp. and PKA International's hazing policy, however, explicitly states that it does not condone such activity thus placing their agents' actions outside the scope of their agency. Therefore, plaintiff's complaint does not state a sufficient claim for vicarious liability in counts I and II and the trial court properly dismissed that claim as to PKA Corp. and PKA International. See *Adames*, 233 Ill. 2d at 298-99 (conduct of a servant is not within the scope of employment if it is different in kind from what is authorized).

¶ 43     In counts I and II, plaintiff also alleged direct negligence in that PKA Corp. and PKA International permitted and allowed dangerous pledge events at their local chapters, failed to warn their local chapters about the dangers or risks of requiring the consumption of excessive amounts of alcohol, failed to develop reasonable and effective policies to prevent such dangerous events, and failed to ensure that their local chapters followed policies and procedures regarding proper initiation procedures. Unlike liability based on a theory of *respondeat superior*, a claim of direct negligence requires malfeasance on the part of the principal itself. However, in order to state a cause of action in negligence, plaintiff must establish that defendants owed a duty to David. *McLane v. Russell*, 131 Ill. 2d 509, 514 (1989).

¶ 44     To find such a duty, plaintiff and defendant must stand in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the

benefit of plaintiff. *Id*. at 514-15. The mere allegation of a duty is insufficient; instead, the complaint must allege facts from which the law will raise a duty. *Woodson v. North Chicago Community School District No. 64*, 187 Ill. App. 3d 168, 172 (1989). The absence of factual allegations supporting plaintiff's duty claim justifies dismissal of his pleading. *Rabel v. Illinois Wesleyan University*, 161 Ill. App. 3d 348, 356 (1987).

¶ 45 In the complaint, plaintiff alleged that PKA Corp. and PKA International "owed plaintiff's decedent a duty to prevent the foreseeable consequences of required excessive consumption of alcohol during initiation ritual, including death." Foreseeability, however, is only one factor in determining the existence of a duty. *Quinton v. Kuffer*, 221 Ill. App. 3d 466, 473 (1991). This determination should also take into account the likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on defendant. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 526 (1987). Plaintiff did not allege any of the other elements in determining duty.

¶ 46 Plaintiff also alleged that PKA Corp. and PKA International engaged in the business of recruiting membership into its organizations, encouraged the local chapters to conduct Greek night events, and required pledges and members to adhere to "the fraternity Constitution, Risk Assessment Manual Chapter Codes and its quarterly publication *The Shield and Diamond* and *The Garnet and Gold* pledge manual." Plaintiff alleged that PKA Corp. and PKA International had the authority to "ban and prohibit pledging activities outright," subjected local chapters to annual week-long assessments, and "had the right and the power to expel, suspend or place restrictive remedial conditions" on local chapters and individual members. However, these allegations are insufficient to create a relationship that imposes upon PKA Corp. and PKA International a duty to protect David, as well as the pledges of all their chapters nationally and

internationally, from the harm he suffered. The test of agency is whether the principal has the right to control the manner and method in which the agent carries out its duties. *Anderson v. Boy Scouts of America, Inc*., 226 Ill. App. 3d 440, 443 (1992). Citing to the principal's bylaws, rules or regulations is insufficient to establish control unless they show direct supervisory authority over how the agent accomplishes its tasks. *Id*. at 444. Plaintiff's complaint did not allege that PKA Corp. or PKA International had the right to control the activities local chapters and their members used during the pledging process.

¶ 47 Upon consideration of the other elements of duty, we find that imposition of such a duty when PKA Corp. and PKA International are not alleged to have knowledge of or ability to control the day-to-day activities of their members or pledges, would present an unrealistic burden. See *Rabel*, 161 Ill. App. 3d at 360-61. Therefore, plaintiff has not alleged sufficient facts to support the duty allegations. Without a sufficient allegation of duty, plaintiff cannot state a legally sufficient claim for negligence. We affirm the trial court's dismissal of counts I and II against defendants PKA Corp. and PKA International.

¶ 48 In counts IX and X, plaintiff alleged that the named nonmember sorority women who participated in Mom and Dad's Night owed David a duty of reasonable care not to subject him to the excessive consumption of alcohol. However, plaintiff does not allege how, as nonmembers of the fraternity, these women could have required David to drink to intoxication in order to become a member of the fraternity. See *Quinn*, 155 Ill. App. 3d at 237-38. They had no authority to determine who would become members of an organization in which they did not belong. There is no language in *Haben* or *Quinn* that would extend such a duty of care to nonmembers of an organization who participate in the event, and we decline to do so here.

Therefore, we affirm the trial court's dismissal of plaintiff's claim against nonmembers of the fraternity (counts IX and X).

¶ 49    Finally, counts XI and XII allege a negligence claim against the landlord of the premises where the event occurred, Pike Alum.  The complaint alleged that Pike Alum leased the premises to the Eta Nu chapter when it knew the tenant was conducting dangerous events such as Mom and Dad's Night thereon, it failed to contact the university or law enforcement to alert them to the dangerous activity, and attempted to prevent such activities from taking place "but did so ineffectively."   Generally, under Illinois law no duty exists requiring a landowner to protect a person from the criminal actions of a third party unless the criminal conduct was reasonably foreseeable and a special relationship exists between the injured party and the defendant. *Leonardi v. Bradley University*, 253 Ill. App. 3d 685, 689-90 (1993).   Special relationships include: common carrier and passenger; innkeeper and guest; business invitor and invitee; or voluntary custodian and protectee.  *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629, 632-33 (1995).   Plaintiff's complaint did not allege a legally-recognized special relationship between David and Pike Alum.

¶ 50    Nor does the complaint allege that Pike Alum retained control of the premises so as to trigger a duty.   Under Illinois law, a landlord is not liable for injuries caused by a dangerous condition on the premises leased to a tenant and under the tenant's control.  *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 413 (1991).   Plaintiff asks that we find a duty based upon Pike Alum's alleged knowledge that dangerous events such as Mom and Dad's Night were taking place on the premises, citing a case from another jurisdiction as support (*Oja v. Grand Chapter of Theta Chi Fraternity, Inc.*, 680 N.Y.S.2d 277 (N.Y. App. Div. 1998)).   However, even if this court were to follow a case which has no precedential authority here, plaintiff's complaint alleged

insufficient facts to support his negligence claim. Plaintiff's allegations merely concluded that Pike Alum knew of dangerous events taking place at the fraternity because it is an alumnus of PKA, from reading and receiving reports in newsletters and email alerts, and receiving updates on disciplinary actions taken against Eta Nu and other chapters nationwide. Plaintiff did not allege facts supporting these conclusory allegations. Since plaintiff did not allege a special relationship creating a duty owed by Pike Alum, the trial court properly dismissed plaintiff's claims against Pike Alum (counts XI and XII).

¶ 51 For the foregoing reasons, the judgment of the circuit court is affirmed as to counts I, II, IX, X, XI, and XII. We reverse the trial court's dismissal of counts III, IV, V, VI, VII, and VIII, and remand for further proceedings.

¶ 52 Affirmed in part; reversed in part. Remanded for further proceedings.

¶ 53 JUSTICE CONNORS, specially concurring:

¶ 54 Although the majority and I reach the same conclusion, I find it necessary to write separately to address and attempt to clarify the apparent state of confusion regarding how a plaintiff satisfies the requirements of bringing a cause of action under the Hazing Act. Specifically, I depart from the majority in order to further explain the narrowly tailored duty recognized by the courts in *Quinn* and *Haben*. To be clear, I agree with the majority's analysis of the duty under the Hazing Act as applied to PKA Corp. and PKA International, the nonmember defendants, and premises owner defendants. I also agree with the majority's analysis regarding the plaintiff's satisfaction of the pleading requirements for a negligence claim based on voluntary undertaking, and therefore do not write separately on those issues. Thus, the purpose of this concurrence is to concentrate on the limited issue of addressing and analyzing the duty

requirement in a negligence action brought under the Hazing Act against individual members of a fraternity or similar organization, and the local chapter of said organization.

¶ 55    The primary question before this court, as it was in *Quinn*, is whether the local fraternity chapter defendant, Eta Nu chapter of PKA, owed a common law duty to plaintiff to refrain from requiring participation in hazing acts.   As the majority suggests, a reviewing court must determine whether plaintiff's complaint comports with the following two essential factors: (1) that plaintiff was required to drink to intoxication in order to join the fraternity, and (2) the legislature has enacted a statute against hazing.   *Quinn*, 155 Ill. App. 3d at 237-38.   In my opinion, plaintiff's complaint clearly satisfies these two requirements.   His complaint alleges that "attendance and participation [at Mom and Dad's night] was a mandatory prerequisite to active membership in the fraternity and that [pledges] would be required to drink excessive amounts of alcohol during the event."   The Hazing Act is still in force and effect, thus, the legislature has evidenced its intent to discourage hazing conduct.

¶ 56    Looking to the duty analysis in *Quinn*, I call attention to a section of the *Quinn* court's examination that the majority here did not examine in great detail, but which I find necessary to explain the existence of a duty under the Hazing Act.   *Supra* ¶ 23.   Specifically, I write separately to address the additional steps I believe a reviewing court must complete in order to determine whether the duty created by the Hazing Act forms the basis for a common law negligence action in a particular case.   The *Quinn* court looked to the factors outlined in *Lance v. Senior*, 36 Ill. 2d 516, 518 (1967), to help determine whether a duty should be placed on the defendant.   The *Lance* factors are: (1) the foreseeability of the occurrence, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against it, and (4) the consequences of placing that burden on defendant.   *Id.*   I believe it is essential for this court and future reviewing courts to

determine on a case-by-case basis whether the facts before it satisfy the *Lance* factors, and thus give rise to a duty. It is not enough to merely look to the two *Quinn* factors when faced with a case brought under the Hazing Act.

¶ 57 I believe this case satisfies all four of the *Lance* factors, but I also believe there are cases that may purport to allege a cause of action under the Hazing Act that would not satisfy the requisite factors, which is why a careful examination of each factor is crucial. Looking to the first *Lance* factor, it was certainly foreseeable that plaintiff and other pledges would become harmfully intoxicated. Plaintiff's complaint alleges that at Mom and Dad's night, the pledges were each given four-ounce plastic cups that were repeatedly filled with vodka in each room the pledges visited. Each pledge was then required to drink the vodka after answering "nonsensical" questions from the pledge board members and female nonmembers. If pledges manifested an unwillingness to drink, they were called "pussies" and "bitches" until they assented. The complaint further alleged that plaintiff's decedent, David, had consumed three to five cups of vodka in each of the seven rooms he visited. This equates to a total of a minimum of 21 cups of vodka. Even assuming, *arguendo*, that each cup only had one ounce of vodka in it, that would still mean that David ingested 21 ounces of vodka in 1 ½ hours. It is clearly foreseeable that requiring a person to consume 21 ounces of vodka in 1 ½ hours could result in harm and even death. In fact, according to plaintiff's complaint, defendant pledge board members knew that it was likely that the pledges would drink to vomit-inducing intoxication, because when the pledges were taken to the house basement once "they were no longer able to walk on their own," they were given buckets that had been decorated by the female nonmember defendants. If defendant pledge board members could not foresee that vomit-inducing intoxication levels were likely to result from

their conduct of forced alcohol ingestion, then it begs the question—for what other purpose were the decorated buckets provided?

¶ 58    Further, plaintiff's complaint alleges that "[David] was placed in a bed in his Greek father's room by active member Gregory Petryka who tried to orient his head and body so that if he vomited, he would not choke on it," thus the pledge board members foresaw that the pledges would be so intoxicated that they may even vomit in their sleep, which could cause asphyxiation.   In their response brief, the Eta Nu chapter of PKA, PKA Corp., and PKA International stated "the allegations [of plaintiff's complaint] reveal a social drinking party for the pledges in which a few pledges jumped at the chance to overconsume and others were more judicious and other declined." Based on the allegations of plaintiff's complaint, this statement by the Eta Nu chapter of PKA, PKA Corp., and PKA International is a gross mischaracterization of the events in question. Contrary to their contention that a few pledges took it upon themselves to consume alcohol in dangerous and even fatal levels, I believe the foreseeability of injury was overwhelmingly clear to defendants.   Additionally, based on these same alleged facts, plaintiff has also satisfied the second *Lance* factor by showing that injury, and even death, was likely.

¶ 59    Turning to the third *Lance* factor, I believe plaintiff has shown that the magnitude in guarding against the injury he suffered was minimal, if not completely avoidable.   Simply put, there is no reasonable interest served in engaging in the conduct that is at issue in this case. Requiring teenagers, whether they are minors in the eyes of the law or not, or anyone for that matter, to ingest alcohol to the point of, at a minimum, vomiting on themselves does not further any public policy interest, thus I see no reason to protect such behavior in this case.   The burden of guarding against this type of conduct is minimal and I believe our legislature has evidenced its frustration with hazing-related incidents and injuries by enacting the Hazing Act.

¶ 60    Plaintiff has satisfied the fourth *Lance* factor by showing that the burden of placing the consequences on defendant is appropriate.   The conduct at issue here that resulted in David's death was squarely within the control of the defendants.   That is not to say that ultimately a fact finder may determine their percentage of fault to be less than 100%.   As the court in *Quinn* noted, "[t]o the extent that plaintiff acted willingly, liability can be transferred to him under principles of comparative negligence."   *Quinn*, 155 Ill. App. 3d at 237.   The defendant pledge board members and the Eta Nu chapter of PKA are the proper parties to bear the consequences for the conduct that caused plaintiff's injuries.

¶ 61    I also want to emphasize the *Quinn* court's recognition that the mere providing of alcohol was not what gave rise to a common law duty.   *Quinn*, 155 Ill. App. 3d at 237.   Rather, the facts of that case involved something more, namely "that the abuse illustrated *** could have resulted in the termination of life and that plaintiff was coerced into being his own executioner."   *Id.*   The situation that the *Quinn* court foresaw almost eerily mirrors the factual scenario alleged in this case.   Here, David was forced to consume alcohol, and as a result, his life was terminated.

¶ 62    Additionally, I write separately to expound on the majority's mention of *Quinn*'s acknowledgement that our supreme court has recognized: The violation of a statute or ordinance "designed for the protection of human life or property is *prima facie* evidence of negligence" (Internal quotation marks omitted.)   *Supra* ¶ 24 (quoting *Quinn*, 155 Ill. App. 3d at 238).   Although not addressed by the majority here, the court in *Quinn* further stated: "In order to sustain such a cause of action, two conditions must be met: first, the plaintiff must be within the class of persons the ordinance was designed to protect; and second, the plaintiff must have suffered the type of harm the statute was designed to prevent."   (Internal quotation marks omitted.)   *Quinn*,

155 Ill. App. 3d at 238. Therefore, unlike the majority, I believe reviewing courts must also determine whether these two conditions are met on a case-by-case basis.

¶ 63    Here, the statute under which plaintiff brings his cause of action is the Hazing Act, which reads,

"A person commits hazing who knowingly requires the performance of any act by a student or other person in a school, college, university, or other educational institution of this [s]tate, for the purpose of induction or admission into any group, organization, or society associated or connected with that institution if:

(a) the act is not sanctioned or authorized by that educational institution; and

(b) the act results in bodily harm to any   person."   720 ILCS 12C-50 (West 2012).

¶ 64    It is clear that plaintiff is within the type of persons that the Hazing Act was enacted to protect.   David was a college student who wanted to join a fraternity associated with NIU. Plaintiff's complaint alleges specific facts that show that the alleged hazing acts at issue, *i.e.* forcing David to drink alcohol until dangerously intoxicated, was not sanctioned by the institution, and that said conduct resulted in the ultimate harm to plaintiff, his death.   Additionally, plaintiff's complaint alleged that, contrary to NIU's policies, "Mom and Dad's Night" had not been sanctioned with NIU.

¶ 65    Plaintiff has satisfied *Quinn*'s narrowly tailored Hazing Act factors by alleging sufficient facts to show that plaintiff was required to drink to intoxication and that the legislature enacted a statute against hazing.   Additionally, plaintiff has adequately pled a duty, and ultimately a cause of action, under the Hazing Act by alleging sufficient facts to satisfy the four *Lance* factors. Finally, it is essential that plaintiff was the type of person the Hazing Act was meant to protect, and that he suffered the type of harm that the Hazing Act was designed to prevent.   I believe it is the

combination of these pleading requirements that allow a plaintiff to adequately set forth the requisite duty element for a common law negligence cause of action brought pursuant to the Hazing Act.