2025 IL App (1st) 230949
No. 1-23-0949
Opinion filed February 14, 2025

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| BRIAN BALL, | ) Appeal from the Circuit Court<br>) of Cook County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 22 L 004179 |
| | ) |
| CHICAGO WHITE SOX, LTD., | ) |
| | ) The Honorable |
| Defendant-Appellee. | ) Thomas M. Donnelly,<br>) Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices C.A. Walker and Gamrath concurred in the judgment, and opinion.

**OPINION**

¶ 1     An employee may waive the protections afforded by the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2022)) as long as the employee does so voluntarily and knowingly. But "knowingly" demands more than a perfunctory signature; the employer must act truthfully and transparently. To permit otherwise strips "knowingly" of meaning.

¶ 2     Brian Ball dedicated over two decades to the Chicago White Sox, Ltd. (White Sox), rising from assistant athletic trainer to head trainer. Then, in October 2020, the White Sox fired Ball, informing him that he no longer "fit in" with their plans. The White Sox presented him with

a termination agreement offering severance pay and healthcare benefits in exchange for a sweeping release, including claims arising out of alleged violations of the Act (*id.*).

¶ 3    Ball believed general manager Frederick Hahn's explanation for his termination and signed the agreement. Two months later, a White Sox management employee revealed to Ball that the team fired him because of his sexual orientation. Ball continued to receive severance payments and health insurance until the agreement expired. Then, he sued the White Sox and Hahn, contending that he was fired without justification and they fraudulently concealed and misrepresented the actual reason.

¶ 4    The White Sox and Hahn moved to dismiss, claiming the termination agreement barred Ball's claims. Ball voluntarily withdrew all counts other than the discrimination claims against the White Sox. The trial court dismissed the complaint with prejudice, holding the agreement refuted Ball's discrimination allegations and he failed to present a clear and convincing reason to set it aside.

¶ 5    In asking us to reverse, Ball argues, among other reasons, that (i) the trial court improperly shifted the burden to him rather than accepting the truth of his allegations and considering the allegations in the light most favorable to him and (ii) the White Sox procured the termination agreement through fraudulent concealment and misrepresentation of a material fact.

¶ 6    The law has long stood by the principle that no wrongdoer may benefit from their own misdeed. See, *e.g.*, *Messersmith v. American Fidelity Co.*, 133 N.E. 432, 433 (N.Y 1921) ("no one shall be permitted to take advantage of [their] own wrong"). Affirming under the allegations before us would allow the White Sox to evade accountability under the Act through fraud, effectively sanctioning a discriminatory termination by means of deceit. We agree with Ball's arguments, reverse the trial court's decision, and remand for further proceedings.

¶ 7                              Background

¶ 8          Ball began as an assistant athletic trainer for the White Sox in 2000. In 2018, the White Sox promoted him to head athletic trainer. By all accounts, Ball's tenure was marked by dedication and success, including his role in the team's 2005 World Series championship.

¶ 9          In February 2020, the White Sox shifted Ball's responsibilities, telling him he would no longer directly treat players and assigning him to an administrative position, overseeing those who provided treatment. Ball worked under a Major League Club Uniform Employee Contract (UEC) in effect from October 31, 2019, until October 31, 2021. An addendum allowed the White Sox to stop paying Ball compensation should he be terminated during a period in which Major League Baseball (MLB) had suspended the UEC.

¶ 10          In March 2020, the unprecedented COVID-19 pandemic disrupted the MLB season. The next month, the MLB commissioner suspended the contracts of employees covered by the UEC, effective May 1. The White Sox retained Ball for the remainder of the 2020 season. And he continued working at the Arizona training facility.

¶ 11          Ball was the victim of a violent carjacking in July 2020. After taking an injured player to the hospital, Ball went to his nearby apartment to pick up some work notes. As he got back into his car, two men attacked and severely beat Ball before stealing the car. Ball intended to return to work the next day, but Hahn and the assistant general manager placed him on medical leave and directed that he see a psychologist as a condition for returning to work. Ball says Hahn assured him that his position as head trainer would be waiting. He also alleges that while on leave, the White Sox discussed his mental health with his psychologist without his consent.

¶ 12     The psychologist approved Ball's return in August, but Hahn instructed Ball to take more time to recover. According to Ball, Hahn reiterated that his job was safe and he would be with the organization for a long time.

¶ 13     Nonetheless, on October 26, 2020, Hahn called Ball and told him the White Sox were terminating him. Ball asked why. Hahn answered that Ball did not "fit in" with the organization's plan to reach the next level. Ball accepted Hahn's explanation.

¶ 14     The next day, the White Sox presented Ball with a termination agreement offering until October 31, 2021, one year of salary and health insurance premiums. Ball still had health insurance coverage under the MLB Player Benefit Plan's trust agreement. In exchange, Ball agreed to waive, release, and not sue the White Sox for "any and all known and unknown claims, damages, charges of discrimination, demands, losses, liabilities, and causes of action" for alleged violations of "federal, state, or local statutes, ordinances, or common laws, including but not limited to the Age Discrimination in Employment Act of 1967, *** the Americans With Disabilities Act *** [and] the Illinois Human Rights Act."

¶ 15     The agreement advised Ball to read it and consult with an attorney before signing. Under the agreement, Ball had 21 days to sign, with an additional 7 days to revoke. Ball alleges, however, that the White Sox told him that if he did not sign and return the agreement within a week, the team would rescind it. Ball signed and submitted the agreement within a week.

¶ 16     Two months later, a White Sox management-level employee revealed to Ball that contrary to what Hahn told him, his termination had nothing to do with organizational fit but rather his sexual orientation. With this information, Ball filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR). The EEOC issued a right-to-sue letter, stating it would be unable to complete the

administrative process within 180 days of filing the charge, and Ball could file a complaint in state or federal court within 90 days. Similarly, at Ball's request, the IDHR did not investigate his claims but adopted the EEOC's findings, issued a notice of dismissal for lack of substantial evidence, closed the file, and permitted Ball to pursue a civil action.

¶ 17    Ball filed a five-count complaint against the White Sox and Hahn, asserting sex, age, and disability discrimination in violation of the Act (counts I to III), defamation *per se* (count IV), and intentional infliction of emotional distress (count V). The White Sox and Hahn filed a combined motion to dismiss under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2022)), accompanied by an affidavit from Hahn. The motion argued for dismissal with prejudice under section 2-619(a)(6) (*id.* § 2-619(a)(6)) because the termination agreement released all claims, known and unknown, including claims for discrimination under the Act. Hahn's affidavit addressed Ball's termination in October 2020 but was silent about Ball's allegations that Hahn fraudulently concealed and misrepresented the actual reason.

¶ 18    Ball withdrew all counts as to Hahn and dismissed counts IV and V as to the White Sox, leaving the discrimination claims. After a hearing, the trial court dismissed the complaint with prejudice. The trial court found that the agreement refuted Ball's discrimination claims and that Ball "did not provide clear and convincing evidence grounds to set aside the Termination Agreement, which I think is what you must do on a 2-619."

¶ 19    Analysis

¶ 20    Standard of Review

¶ 21    A section 2-619 motion to dismiss concedes the legal sufficiency of the complaint along with all well-pleaded facts and reasonable inferences but asserts affirmative matter outside the complaint to avoid or defeat the action. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343,

352-53 (2008) (citing *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 325 (1995)). Relevant here, section 2-619(a)(6) authorizes dismissal of a claim based on a release. 735 ILCS 5/2-619(a)(6) (West 2022). When ruling on a section 2-619 motion, courts construe the pleadings in the light most favorable to the nonmoving party and grant the motion only when the plaintiff can show no set of facts entitling them to recovery. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97 (2004). The burden lies first with the defendant to present affirmative matter defeating the claim. Once met, the burden shifts to the plaintiff to demonstrate that the defense is either unfounded or leaves unresolved questions of material fact. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). Our review is *de novo*. *Ferguson*, 213 Ill. 2d at 99.

¶ 22                                                  Contentions

¶ 23          Ball asks us to reverse the dismissal and remand for trial, arguing (i) the trial court improperly shifted the burden to him rather than accepting the truth of his allegations and considering them in the light most favorable to him, (ii) the termination agreement does not apply to his discrimination claims because his waiver was procured through fraudulent concealment and misrepresentation of a material fact, (iii) the agreement lacks consideration, and (iv) Hahn's affidavit was deficient.

¶ 24          Because we agree with Ball and reverse based on (i) and (ii), we address only those arguments and need not analyze the remaining grounds.

¶ 25          Ball contends that the trial court erred in holding the agreement waived his claims of discrimination because, when asked, the White Sox fraudulently concealed and misrepresented the actual reason for his termination. Ball further contends that because the

White Sox drafted the agreement and benefited from the release, the agreement must be strictly construed against them. See *Harris v. Walker*, 119 Ill. 2d 542, 548 (1988).

¶ 26 The White Sox contend that the agreement constitutes affirmative matter defeating Ball's claim, and the trial court agreed. We do not.

¶ 27                                     Burden Shifting

¶ 28 Ball's complaint alleges that the White Sox fraudulently concealed and misrepresented the actual reason for terminating him to induce his signing the termination agreement. The trial court concluded that the White Sox satisfied their initial burden by presenting the agreement as affirmative matter to defeat the complaint and then held that Ball failed to provide "clear and convincing evidence" in response. Ball argues that the trial court improperly shifted the burden to him instead of accepting his allegations as true and considering them in a light most favorable to him. We agree.

¶ 29 As noted, a section 2-619 motion to dismiss concedes the legal sufficiency of the complaint and all well-pleaded facts and reasonable inferences but asserts affirmative matter outside the complaint to avoid or defeat the action. See *Porter*, 227 Ill. 2d at 352-53. The burden then shifts to the plaintiff to demonstrate that the defense is either unfounded or leaves unresolved questions of material fact. *Hodge*, 156 Ill. 2d at 116.

¶ 30 During the hearing on the motion to dismiss, the trial court asked Ball's attorney if he had "established by clear and convincing evidence *** [that the White Sox] committed fraud here" and suggested he needed to present facts rather than allegations. Although Hahn's affidavit did not mention Ball's allegations of fraud, the trial court concluded the agreement was controlling in the absence of an affidavit from Ball establishing "clear and convincing evidence grounds to set aside the Termination Agreement." We commend the trial judge for

his thorough analysis during the hearing. Still, by effectively treating the agreement as dispositive and demanding a heightened evidentiary standard at this stage, the trial court prematurely resolved factual issues in favor of the White Sox and improperly shifted the White Sox's initial burden onto Ball.

¶ 31    The allegations in Ball's complaint directly challenge the validity of the termination agreement. If, as he alleges, the White Sox procured his signature by concealing the truth, it would not constitute a valid agreement or affirmative matter sufficient to defeat Ball's claims. This raises a genuine issue of material fact that cannot be disposed of through a section 2-619(a)(9) motion to dismiss. See *id.* at 116-17 (existence of disputed question of fact is enough to preclude dismissal under section 2-619); see also *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 43 ("Section 2-619(a)(9) is not a proper vehicle to contest factual allegations; nor does it authorize a fact-based 'mini-trial' on whether plaintiff can support his allegations." (Internal quotation marks omitted.)).

¶ 32                    Waiver of Rights Must Be Knowing and Voluntary

¶ 33    The Act, like Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (2018)) and the Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. § 621 *et seq.* (2018)), protects employees from discrimination, retaliation, and other unlawful employment practices. Courts have long held that waiver of rights under these statutes is enforceable only when voluntarily and knowingly made. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974) ("In determining the effectiveness of [a waiver of a Title VII claim], a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing."); see also *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 570 (7th Cir. 1995) ("Employees may waive their federal ADEA rights in private

settlements with their employers, provided that their consent to a release is both knowing and voluntary.").

¶ 34　　　Whether a release was knowing and voluntary depends on the totality of the circumstances of its execution and other factors, including (i) the employee's education and business experience, (ii) the employee's role in negotiating the terms, (iii) the clarity of the agreement, (iv) the amount of time for deliberation before signing, (v) whether the employee read the release and considered its terms before signing, (vi) whether the employee consulted with an attorney, (vii) whether the consideration provided for the waiver exceeded the benefits to which the employee was already entitled by contract or law, and (viii) whether the employer engaged in improper conduct to induce the employee's release. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 716-17 (7th Cir. 2009).

¶ 35　　　Courts may not tally the factors quantitatively. *Maloney v. R.R. Donnelley & Sons Co.*, No. 97 C 8890, 1999 WL 58551, at *6 (N.D. Ill. Feb. 3, 1999). To employ a "rigid, formalistic" procedure would interfere with the additional scrutiny given to waivers of rights—to determine whether the employee has "a clear understanding of the ramifications of [his or] her actions." *Id.*

¶ 36　　　Several factors weigh against enforcing the waiver. First, the timing and context of the agreement's execution merit attention. Ball signed the agreement during a rare global pandemic when the unemployment rate reached an unprecedented 14.8%, a percentage never reported since the government started following unemployment levels in 1948 and which did not begin to decline until February 2021. Cong. Research Serv., Unemployment Rates During the COVID-19 Pandemic: In Brief 2-3 (Mar. 12, 2021), https://crsreports.congress.gov/

product/pdf/R/R46554/9 [https://perma.cc/DJS9-AYZN]. At this time, Ball would have had to give up continued access to health insurance months after the violent carjacking.

¶ 37    Second, nothing indicates that, as an athletic trainer, Ball had business experience or legal knowledge necessary to appreciate the consequences of the agreement. Moreover, he had no say in its drafting. Further, although the agreement allowed 21 days for consideration, the White Sox allegedly imposed a 7-day deadline, leaving Ball with little time to weigh his options. Nothing in the record indicates Ball consulted with an attorney.

¶ 38    More significant, however, Ball alleges that the White Sox deliberately misled him about the reason for termination. General Manager Hahn allegedly told Ball that his dismissal stemmed from a lack of fit with the team's plans. Weeks later, Ball discovered the White Sox terminated him because of his sexual orientation. Notably, nowhere in the record, including Hahn's affidavit, or during oral arguments did the White Sox refute this claim, leaving the alleged fraudulent concealment and misrepresentation unchallenged.

¶ 39    The White Sox contend they had no duty to provide Ball a reason for terminating him because employers are not fiduciaries of their employees. They also assert that even if a duty existed, Ball ratified alleged defects by retaining the consideration under the agreement.

¶ 40    The law does not condone deception. Ball has pleaded that by withholding the actual reason, the White Sox deprived him of the ability to make an informed decision. Fraudulent concealment violates the principles of good faith and fair dealing and jeopardizes the integrity of the employment relationship. See, *e.g.*, *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000) ("[A]n employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim

of entitlement to family leave."); *Styzinski v. United Security Life Insurance Co. of Illinois*, 332 Ill. App. 3d 417, 422 (2002) (material misrepresentation will render contract unenforceable whether made in good faith or mistakenly); *Johnson v. George J. Ball, Inc.*, 248 Ill. App. 3d 859, 865 (1993) (upholding claim against employer for misleading descriptions of position, which induced employee to relocate).

¶ 41    Indeed, allowing an employer to conceal discriminatory motives while inducing an employee to waive statutory protections undercuts the very purpose of anti-discrimination statutes. Just as fraudulent concealment tolls the statute of limitations, an employer's concealment of discriminatory practices prevents the enforcement of waivers obtained under false pretenses. See *Hagney v. Lopeman*, 147 Ill. 2d 458, 462 (1992) (operation of statute of limitations tolled if party can prove some fraud prevented discovery of cause of action); *Greenhill v. Vartanian*, 917 F.3d 984, 988 (7th Cir. 2019) (under Illinois law, doctrine of fraudulent concealment prohibits a wrongdoer who actively tries to prevent suit from invoking statute of limitations when suit comes).

¶ 42    A waiver procured through fraudulent concealment or misrepresentation cannot be voluntary and knowing. That would send a dangerous message: misrepresentation, fraud, or coercion can nullify the protections under the Act. See *Alexander*, 415 U.S. at 52 n.15 (employee cannot forfeit substantive rights under Title VII without voluntary and knowing waiver); see also *Pierce*, 65 F.3d at 570 ("Employees may waive their federal ADEA rights in private settlements with their employers, provided that their consent to a release is both knowing and voluntary."). Employers may not benefit from their deception. See, *e.g.*, *Sparre v. United States Department of Labor*, 924 F.3d 398, 403 (7th Cir. 2019) (recognizing

equitable tolling of the statute of limitations when employer has actively misled employee about claim).

¶ 43 Accepting Ball's well-pleaded allegations, as we must, we reverse dismissal and remand for further proceedings.

¶ 44                                    Ratification

¶ 45 The White Sox assert that even if the agreement is voidable, we should affirm because Ball ratified alleged defects in the termination agreement by accepting and retaining the severance pay and medical benefits after learning that the team fired him because of his sexual orientation.

¶ 46 The application of ratification principles must account for the specific facts and circumstances. See *Stathis v. Geldermann, Inc.*, 258 Ill. App. 3d 690, 700 (1994) (ratification is question of fact to be decided by looking at totality of the circumstances, particularly where reasonable persons can draw differing inferences from circumstances). Moreover, public policy strongly favors holding employers accountable for wrongful actions, including discrimination. See 775 ILCS 5/1-102(A) (West 2022) ("It is the public policy of this State *** [t]o secure for all individuals within Illinois the freedom from discrimination *** in connection with employment ***.").

¶ 47 The trial court did not address ratification, dismissing solely on the basis of the termination agreement. Because resolving the question of ratification involves issues of fact, we refrain from deciding it and remand for its consideration by the trial court.

¶ 48 Reversed and remanded.

*Ball v. Chicago White Sox, Ltd.*, **2025 IL App (1st) 230949**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-4179; the Hon. Thomas M. Donnelly, Judge, presiding. |
| **Attorneys for Appellant:** | John F. Winters Jr. and Bart J. Galvin, of Winters Salzetta O'Brien & Richardson, L.L.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Clifford R. Perry, Brian K. Jackson, and Marron Mahoney, of Laner Muchin, Ltd., of Chicago, for appellee. |