**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250174-U

Order filed April 2, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| COMMUNITY HOME PHYSICIANS, LLC, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-25-0174 |
| | ) | Circuit No. 24-LA-123 |
| ELIZABETH DE LA MORA, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | David E. Schwartz, |
| | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Hettel and Justice Anderson concurred in the judgment.

_____

**ORDER**

¶ 1  *Held*: The circuit court properly dismissed the amended complaint. Affirmed.

¶ 2  Plaintiff, Community Home Physicians, LLC (CHP) entered into a business relationship with a Northwestern Medicine hospital (Northwestern) whereby CHP would provide Northwestern with transitional care management services. CHP assigned its employee, defendant Elizabeth De La Mora, to Northwestern to implement CHP's case management services. Elizabeth executed an employment agreement and noncompetition agreement, which contained certain covenants not to

compete or solicit. Notwithstanding, Elizabeth eventually accepted an employment offer from Northwestern to provide similar case management services. Northwestern subsequently terminated CHP's care management program. CHP filed a four-count amended complaint alleging Elizabeth's breach of contract, breach of fiduciary duty, tortious interference with a prospective economic advantage, and civil conspiracy. On Elizabeth's motion, the circuit court dismissed counts I and II for the existence of affirmative matters barring the action pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2024)) and counts III and IV for failure to state a claim pursuant to section 2-615 (*id.* § 2-615). CHP appealed. For the reasons that follow, we affirm.

¶ 3                                               I. BACKGROUND

¶ 4        The following facts are derived from the pleadings. CHP is a medical practice that "specializes in providing comprehensive geriatric and transitional care across the healthcare continuum, from acute hospital care to post-acute facilities and patient homes." Elizabeth is a registered nurse and began working for CHP as a case manager on August 29, 2022. In May 2023, Elizabeth was promoted to transitional care manager. Her role "was non-clinical and did not involve nursing duties."

¶ 5        CHP invested significant time and resources in the development of its programs and relationships with patient referral sources. On July 11, 2023, following approximately one year of coordination, CHP launched "a comprehensive transitional care management program" (program) at a Northwestern hospital located in Palos Heights. CHP assigned Elizabeth to Northwestern as a case manager to "spearhead" the implementation of its program. Because Elizabeth's position granted her access to Northwestern's members and the logistics of CHP's program, CHP required Elizabeth's execution of a "registered nurse employment agreement" (employment agreement) and "noncompetition agreement."

2

¶ 6    The employment agreement referred to Elizabeth as "Registered Nurse" and provided that CHP would employ her "to provide transitional care management and other assignments provided by [CHP] from time to time to patients located in various locations ***." A condition of Elizabeth's employment was that she be a licensed registered nurse or have an approved master's degree. Section 2(b) stated that Elizabeth was to use the practice sites exclusively for the duties assigned by CHP "on behalf of [CHP] and [CHP]'s patients and no other third party (including herself or himself)." Section 2(e) provided that "any billable revenue, income, and fees from [Elizabeth]'s rendition of services to patients shall belong to [CHP], irrespective of the source of them." Section 4(a) provided that the agreement was "for a term commencing on the Effective Date and ending one year therefrom ***, and shall automatically renew from year to year unless otherwise terminated ***." Section 6(a) provided that CHP had exclusive authority to determine the fees to charge its patients and that any sums paid by patients for services rendered by Elizabeth belonged to CHP. Section 8 provided, in part, that Elizabeth understood it to be an express condition of her employment that she "enter into a corresponding noncompetition agreement ***, which includes confidentiality, non-solicitation, and non-compete obligations ***."

¶ 7    The noncompetition agreement defined Elizabeth's term of employment as the term set forth in the employment agreement. Section IV(a) provided as follows:

"*Non-Solicitation*. During the Term of [Elizabeth]'s Employment and for a period of two (2) years following the termination of [Elizabeth]'s Employment, [Elizabeth] shall (1) *refrain from soliciting patients or entities [Elizabeth] serviced or services during the Term of [Elizabeth]'s Employment, on behalf of himself or persons, physicians, entities, practices, clinics, hospitals, or agencies other than [CHP]*, (2) refrain from soliciting patients from or through the same hospitals, acute/sub-acute/post-acute centers, physicians,

3

providers, practices, facilities and other healthcare professionals who have referred patients to [CHP] during the Term of [Elizabeth]'s Employment, and (3) *refrain from soliciting and/or servicing* staff, contractors, or affiliates of (a) [CHP], (b) [CHP]'s management or billing company, and/or (c) *the facilities and Practice Locations [Elizabeth] services or works at on behalf of [CHP] during the Term of [Elizabeth]'s Employment, on behalf of [Elizabeth] or persons, physicians, entities, practices, clinics, hospitals, or agencies other than [CHP].*" (Emphases added.)

Section IV(b) set forth certain noncompete provisions. Section V(e) provided, in part, "In case any one or more of the sentences and provisions contained in this Agreement shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby." Elizabeth was paid a loyalty bonus in consideration of these restrictive covenants.

¶ 8      Kunume Onwueme, Northwestern's director of care coordination (we note that record contains references to this individual spelled both "Onwueme" and "Onwuema"), and Lindsay Vandenberg, Northwestern's assistant manager of care coordination, collaborated with CHP in its implementation of the program. Elizabeth "repeatedly solicited and engaged in discussions with *** Onwueme and *** Vandenberg *** about joining Northwestern's employment work force directly as early as October of 2023." Elizabeth also "discussed with Northwestern Hospital the prospect of her potential direct hire *** as a Case Manager, to provide the same or similar services she conducted on behalf of [CHP] directly for Northwestern." In October 2023, Elizabeth informed CHP that she was considering accepting a case manager position at Northwestern, at which time CHP informed her that doing so would be problematic due to the noncompetition agreement.

¶ 9 On December 23, 2023, Elizabeth submitted a letter of resignation to CHP. The letter stated, *inter alia*, that Elizabeth was "seeking a position with Northwestern that gives [her] a chance for personal growth and advancement while also giving [her] the flexibility to spend more time with [her] family and assist with volunteer activities." Elizabeth designated February 6, 2024, as her last day of employment. On January 16, 2024, CHP advised Elizabeth by e-mail that she was in violation of the noncompetition agreement.

¶ 10 On January 17, 2024, Northwestern terminated CHP's program, with Onwueme "emphatically insist[ing] that her department now had the ability to provide discharge planning and other case management services internally through her own staff." The same day, CHP terminated Elizabeth's employment for cause. On January 30, 2024, Vandenberg sent an e-mail to CHP and Northwestern staff stating, "We have a new case manager starting on the 7th and she won't require training really;)." Northwestern ultimately rescinded its job offer, and Elizabeth never became Northwestern's employee.

¶ 11 On January 30, 2024, CHP filed a four-count complaint against Elizabeth, alleging (1) breach of contract, (2) breach of fiduciary duty, (3) tortious interference with business and business relationship, and (4) conspiracy. On Elizabeth's motion, the complaint was dismissed without prejudice, and CHP was granted leave to amend.

¶ 12 On November 4, 2024, CHP filed the operative amended complaint setting forth the same claims.

¶ 13 In count I, breach of contract, CHP alleged that the parties had a valid contract (the noncompetition agreement), Elizabeth violated its terms (specifically, the nonsolicitation clauses) by applying for employment with Northwestern, CHP had a legitimate business interest in

5

protecting its confidential information and business relationships, and CHP was harmed by Elizabeth's actions when it lost Northwestern's entire service line.

¶ 14    In count II, breach of fiduciary duty, CHP alleged that Elizabeth, as an employee of CHP, owed CHP a duty of loyalty and a fiduciary duty. CHP claimed that Elizabeth breached her duties "by engaging in communications with Northwestern Hospital about her hire as a case manager, as well as accepting a job offer from Northwestern Hospital while still employed by [CHP]."

¶ 15    In count III, tortious interference with business and business relationship, CHP alleged that Elizabeth was aware of CHP's property interest and business relationship with Northwestern and of CHP's attempts to protect its property interests by requiring Elizabeth to sign the employment and noncompetition agreements. Despite being advised by CHP that her employment with Northwestern would violate said agreements, Elizabeth "knowingly and unjustifiably engaged in activities in violation of her agreements," including "soliciting and accepting employment as a case manager through Northwestern Hospital[] to provide case management services she knew [CHP] had been providing" to Northwestern as part of its program. Shortly after Elizabeth's resignation, Northwestern terminated its relationship with CHP, resulting in damages to CHP.

¶ 16    In count IV, conspiracy, CHP alleged that Elizabeth informed Onwueme and Vandenberg that she had signed the noncompetition agreement and that her employment would violate its terms. Nevertheless, Elizabeth, Onwueme, and Vandenberg agreed to proceed with Elizabeth's employment and Northwestern's termination of CHP's program. This conduct resulted in damages to CHP.

¶ 17    In its prayer for relief, CHP sought "all damages that resulted from [Elizabeth]'s activities that undermined and/or severed [CHP]'s business with Northwestern," as well as attorney fees and costs.

6

¶ 18 On December 5, 2024, Elizabeth filed a combined motion to dismiss the amended complaint pursuant to section 619.1 of the Code (735 ILCS 5/2-619.1 (West 2024)). As to count I, Elizabeth argued that CHP's claim was barred by section 14(g) of the Nurse Agency Licensing Act (Act). 225 ILCS 510/14(g) (West 2024) (prohibiting nurse agencies "from entering into covenants not to compete with nurses *** if the nurse is employed, assigned, or referred by a nurse agency to a health care facility on a temporary basis"). Elizabeth contended that CHP was a nurse agency as defined by section 3 of the Act. *Id.* § 3 (" 'Nurse agency' means any individual, firm, corporation, partnership, or other legal entity that employs, assigns, or refers nurses *** to a health care facility for a fee."). Elizabeth concluded that the Act prohibited the covenants not to compete and, therefore, dismissal of count I was warranted.

¶ 19 Elizabeth further argued that count I should be dismissed, or, alternatively, be disposed of by summary judgment, because the issue was moot. She did not ultimately take the job at Northwestern, as evidenced by an attached letter from another hospital confirming her employment there as a cardiology nurse. Therefore, because Elizabeth never became employed by Northwestern, she could not be in competition with CHP.

¶ 20 As to count II, Elizabeth contended that CHP failed to allege that Elizabeth was a member or manager of CHP, an LLC. Because she was not a member or manager, Elizabeth continued, she did not owe CHP a fiduciary duty.

¶ 21 As to count III, Elizabeth argued that CHP failed to allege the existence of a valid contract between CHP and Northwestern, that Elizabeth was aware of said contract, that Elizabeth induced the breach of the contract, or that Northwestern breached its contract with CHP.

7

¶ 22     As to count IV, Elizabeth contended that CHP failed to set forth allegations of a concerted effort between Northwestern and Elizabeth to engage in an unlawful act or that they "knowingly and voluntarily participated in any unlawful conspiratorial scheme."

¶ 23     In response, CHP argued that the Act is inapplicable to the noncompetition agreement. First, CHP is not a "nurse agency" within the meaning of the Act because CHP did not place Elizabeth at Northwestern "for a fee," as required by section 3. CHP further clarified that it is a "geriatric medical practice, not a staffing agency." Second, CHP contended Elizabeth was not employed by CHP on a "temporary basis," as is necessary to prohibit covenants not to compete under the Act, nor was she employed in a clinical nursing role. Third, CHP argued the Act's prohibition regarding covenants not to compete are irrelevant to CHP's "basic breach of contract claim." This breach of contract claim relates to the nonsolicitation provisions (applicable while Elizabeth was under CHP's employ) contained within the noncompetition agreement, rather than to the post-employment noncompetition covenants. Specifically, Elizabeth violated the nonsolicitation provisions when she, while employed by CHP, "solicit[ed] a key referral source and business relationship for the benefit of a competing entity, Northwestern Hospital." CHP continued that a covenant not to solicit is distinct from a covenant not to compete. For similar reasons, CHP argued that it was irrelevant that Elizabeth did not ultimately work for Northwestern.

¶ 24     As to count II, CHP argued that Elizabeth need not be an officer or director to owe a fiduciary duty to CHP. Elizabeth's status as an employee gave rise to a common law duty of loyalty, which she breached by " 'entic[ing]' her employer's contacts away from her employer, or solicit[ing] her employer's clients *while* employed." (Emphasis in original.) This resulted in damages to CHP where Northwestern severed its relationship with CHP and the program "collapsed due to [Elizabeth's] solicitation efforts."

¶ 25    As to count III, CHP contended that Elizabeth's argument mistakenly considered the elements for a claim of tortious interference with a contract rather than the elements for a claim of tortious interference with a business relationship, which is the theory under which CHP proceeded.

¶ 26    As to count IV and in response to a question raised by the court regarding the absence of Northwestern's designation as a co-defendant at the dismissal of the original complaint, CHP argued that Illinois law does not preclude a claim for civil conspiracy where each co-conspirator is not named as a defendant. CHP further argued that, despite Elizabeth's assertion that CHP failed to allege a concerted agreement between Elizabeth and Northwestern to engage in an unlawful act, CHP did so when it alleged that Northwestern and Elizabeth engaged in discussions and undertook actions that violated the noncompetition agreement.

¶ 27    In reply to CHP's arguments related to count I, Elizabeth disagreed that CHP did not assign Elizabeth to Northwestern "for a fee" and quoted various sections of the employment agreement that referenced the "fees" generated from the services provided by Elizabeth, including the agreement that CHP had exclusive authority to establish and own the fees. Elizabeth further observed that the employment agreement referred to her as "Registered Nurse" and indicated that she would be assigned to patients in healthcare facilities. She continued that the noncompetition agreement, which contained the nonsolicitation provisions, is barred by the Act. Finally, Elizabeth argued that Northwestern was the entity in the position to solicit from CHP, not Elizabeth, and that Elizabeth could not solicit herself. Elizabeth reiterated her arguments set forth in her motion to dismiss as to the remaining counts.

¶ 28    Following a hearing, the court granted Elizabeth's motion to dismiss the amended complaint. Counts I and II were dismissed pursuant to section 2-619 of the Code, and counts III and IV were dismissed pursuant to section 2-615.

9

¶ 29     CHP timely appealed.

¶ 30                            II. ANALYSIS

¶ 31     On appeal, CHP challenges the court's dismissal of all four counts of the amended complaint. We address each count in turn.

¶ 32     Initially, we note that Elizabeth did not file an appellee brief with this court. We may nevertheless address the merits of the appeal where, "the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief ***." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Here, the record is straightforward and contains extensive briefing on the issues raised on appeal. Therefore, we can easily decide the issues before us and proceed to the merits of the appeal.

¶ 33     "Section 2-619.1 [of the Code] allows a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses." (Internal quotation marks omitted.) *Weckbacher v. Watson*, 2025 IL App (4th) 250067, ¶ 22 (quoting *Madison County v. Illinois State Board of Elections*, 2022 IL App (4th) 220169, ¶ 42). A section 2-615 motion to dismiss admits the truth of the facts alleged but challenges the legal sufficiency of those facts. *Weckbacher*, 2025 IL App (4th) 250067, ¶ 22. A trial court "should not dismiss causes of action [pursuant to section 2-615] unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 921 (2007). Section 2-619, on the other hand, provides that a defendant may file a motion to dismiss where "the claim asserted against defendant is barred by other affirmative matter[s] avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2024). "The burden then shifts to the plaintiff to

10

demonstrate that the defense is either unfounded or leaves unresolved questions of material fact." *Ball v. Chicago White Sox, Ltd.*, 2025 IL App (1st) 230949, ¶ 29.

¶ 34    When considering a section 2-619.1 motion to dismiss, a court must "accept all well-pleaded facts in the complaint as true, drawing all reasonable inferences from these facts in favor of the nonmoving party." *Younge v. Berman*, 2025 IL App (2d) 240354, ¶ 18. Notwithstanding, we will not accept legal conclusions or unsupported and conclusory factual allegations. *Id.* A trial court's dismissal of a complaint pursuant to section 2-619.1 is reviewed *de novo*. *Id.* We may affirm the dismissal of a complaint for any reason supported by the record. *AIDA v. Time Warner Entertainment Co., L.P.*, 332 Ill. App. 3d 154, 158 (2002).

¶ 35                    A. Count I – Breach of Contract

¶ 36    CHP argues that the court improperly concluded as a matter of law that the Act invalidated the nonsolicitation clauses of the employment agreement. First, CHP contends that it cannot be said as a matter of law that CHP is a "nurse agency" within the meaning of the Act because CHP alleged that it did not receive a fee from Northwestern in exchange for its implementation of its program. Second, the court's interpretation of the covenant not to solicit as a covenant not to compete was erroneous, and the Act does not prohibit covenants not to solicit.

¶ 37    Beginning with CHP's first argument, section 14(g) of the Act provides,

"Nurse agencies are prohibited from entering into covenants not to compete with nurses *** if the nurse is employed, assigned, or referred by a nurse agency to a health care facility on a temporary basis ***. A covenant not to compete entered into on or after July 1, 2022 *** between a nurse agency and a nurse *** is illegal and void if (i) the nurse is employed, assigned, or referred by a nurse agency to a health care facility on a temporary basis ***." 225 ILCS 510/14(g) (West 2024).

11

It is undisputed on appeal that Elizabeth was employed by CHP on a temporary basis. Section 3 of the Act defines a "nurse agency," in relevant part, as "any individual, firm, corporation, partnership, or other legal entity that employs, assigns, or refers nurses *** to a health care facility *for a fee*." (Emphasis added.) *Id.* § 3.

¶ 38    In its amended complaint, CHP alleged that the program it launched at Northwestern "did not involve Northwestern Hospital's payment of a 'fee' to [CHP]." Both Elizabeth and the court questioned the plausibility of this allegation. In her motion to dismiss, Elizabeth noted that the allegation "beg[ged] the question of whether the services were provided for free." Elizabeth also cited several portions of the employment agreement that referenced monies generated by the services she rendered and provided that they would be established by and belong to CHP. Thus, Elizabeth concluded, because the employment agreement explicitly provided for fees to be paid to CHP, there was no question that CHP is a "nurse agency" under the Act. The court adopted Elizabeth's rationale and concluded that "[t]he only reasonable inference from [Elizabeth]'s contract is that [CHP] is a nurse agency, as defined under the Act, which assigns its nurses to other medical institutions for a fee—in this case, Northwestern Hospital."

¶ 39    When Elizabeth asserted the applicability of the Act to defeat CHP's breach of contract claim pursuant to section 2-619 of the Code, the burden shifted to CHP to demonstrate that Elizabeth's argument was unfounded or left unresolved questions of material fact. *Ball*, 2025 IL App (1st) 230949, ¶ 29. CHP failed to satisfy its burden, as its singular conclusory allegation that it did not receive a fee from Northwestern cannot, without more, support its claim. The amended complaint is devoid of any factual support on this point. *Wolcowicz v. Intercraft Industries, Corp.*, 133 Ill. App. 3d 157, 160 (1985) ("A complaint is insufficient if it states mere conclusions, whether of law or fact. [Citation.] But conclusory statements which are supported by specific factual

12

allegations will be sufficient to withstand a motion to dismiss."). Moreover, considering the language of the employment agreement and the lack of supported allegations to the contrary, the only reasonable inference to be drawn from the record is that CHP received a fee from Northwestern.

¶ 40   We next turn to CHP's argument that the nonsolicitation provision within the noncompetition agreement does not constitute a covenant not to compete and, therefore, the Act does not apply. In support of its argument, CHP cites the definition of a nonsolicitation covenant provided in the Freedom to Work Act (820 ILCS 90/5 (West 2024)). However, the issue on appeal is not whether the relevant contract provision fits within the definition of a covenant not to solicit under the Freedom to Work Act; rather, it is whether the relevant contract provision constitutes a covenant not to compete as defined in the Nurse Agency Licensing Act.

¶ 41   Section 3 of the Act defines a covenant not to compete as follows:

"[A]n agreement between a nurse agency and an employee that restricts the employee from performing:

(1) any work for another employer for a specific period of time;

(2) any work in a specified geographic area; or

(3) any work for another employer that is similar to the work the employee performs for the employer that is a party to the agreement." 225 ILCS 510/3 (West 2024).

¶ 42   In its amended complaint, CHP identified Elizabeth's application for direct employment with Northwestern as the breach of contract. Section IV(a) of the noncompetition agreement states as follows:

"*Non-Solicitation*. During the Term of [Elizabeth]'s Employment and for a period of two (2) years following the termination of [Elizabeth]'s Employment, [Elizabeth] shall (1) refrain from soliciting patients or entities [Elizabeth] serviced or services during the Term of [Elizabeth]'s Employment, on behalf of himself or persons, physicians, entities, practices, clinics, hospitals, or agencies other than [CHP], (2) refrain from soliciting patients from or through the same hospitals, acute/sub-acute/post-acute centers, physicians, provides, practices, facilities and other healthcare professionals who have referred patients to [CHP] during the Term of [Elizabeth]'s Employment, and (3) *refrain from soliciting and/or servicing* staff, contractors, or affiliates of (a) [CHP], (b) [CHP]'s management or billing company, and/or (c) *the facilities and Practice Locations [Elizabeth] services or works at on behalf of [CHP] during the Term of [Elizabeth]'s Employment, on behalf of [Elizabeth] or persons, physicians, entities, practices, clinics, hospitals, or agencies other than [CHP]*." (Emphases added.)

¶ 43     Section IV(a) falls squarely within the definition of a noncompetition agreement under section 3, subsection 1 of the Act in that it restricts the employee's ability for two years after termination to *service* any staff, contractors, or affiliates of the "facilities and Practice Locations [Elizabeth] service[d] or work[ed] at on behalf of [CHP]." To the extent CHP relies upon section IV(a)'s prohibition of certain solicitations to support its claim, it fails to provide, and we have not discovered through independent research, any authority providing that an employee seeking employment at another hospital while employed constitutes a solicitation of any kind.

¶ 44     We affirm the dismissal of count I.

¶ 45                         B. Count II – Breach of Fiduciary Duty

14

¶ 46         CHP next contends that the court erred in dismissing its breach of fiduciary duty claim pursuant to section 2-619 of the Code. In support, CHP argues that (1) Elizabeth owed CHP a common law fiduciary duty as CHP's employee and (2) CHP sufficiently alleged a breach of said duty because Elizabeth solicited CHP's customer (Northwestern) for her own benefit.

¶ 47         To state a claim for breach of fiduciary duty, the plaintiff must allege that a fiduciary duty exists, the duty was breached, and the breach proximately caused injury to the plaintiff. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 313 (2002). "While acting as an agent or employee of another, one owes the duty of fidelity and loyalty; accordingly, a fiduciary cannot act inconsistently with his agency or trust; [*i.e.*], solicit his employer's customers for himself, entice coworkers away from his employer, or appropriate his employer's personal property." *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 683 (1978).

¶ 48         We agree with CHP that Elizabeth, as CHP's employee, owed CHP a common law fiduciary duty. The issue therefore becomes whether CHP alleged sufficient facts to support the element of breach.

¶ 49         CHP argues that it adequately alleged a breach of Elizabeth's duty not to solicit CHP's customers for herself. The amended complaint alleges that Elizabeth breached her fiduciary duty to CHP "by engaging in communications with Northwestern Hospital about her hire as a case manager, as well as accepting a job offer from Northwestern Hospital while still employed by [CHP]." CHP couched this breach within Elizabeth's alleged duty "to perform services at the Northwestern Hospital and with Northwestern solely for [CHP], its business, and its patients, and not to compete against [CHP] nor interfere with its practice or relationships."

¶ 50         As noted above, CHP has not cited, nor has our own research revealed, any authority that supports equating an employee's seeking of an employment opportunity with soliciting the

15

employee's current employer's customers. Indeed, CHP does not allege that Elizabeth established a rival company that offered the same services as CHP and solicited Northwestern as a customer of that business. Elizabeth intended for Northwestern to become her employer, not her customer, and therefore CHP failed to adequately allege a breach of Elizabeth's fiduciary duty. The court's dismissal of count II is affirmed.

¶ 51    To the extent that CHP's amended complaint contains language suggesting a violation of the corporate opportunity doctrine, we observe this doctrine is inapplicable to the facts of the case. The corporate opportunity doctrine, or usurpation of a corporate opportunity, establishes that "it is a breach of fiduciary obligation for a person to seize for his own advantage a business opportunity which rightfully belongs to the corporation by which he is employed." *Mullaney, Wells & Co. v. Savage*, 78 Ill. 2d 534, 545-46 (1980). "Usurpation of a corporate opportunity is a distinct cause of action for breach of fiduciary duty that involves a particular type of injury: the taking or seizing of a corporate opportunity and the commensurate loss of that opportunity by the corporation." *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 47. A "corporate opportunity" has been defined as "a proposed business activity that is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage." (Internal quotation marks omitted.) *Id.* (quoting *Advantage Marketing Group, Inc.*, 2019 IL App (1st) 181126, ¶ 35). Similarly, a "business opportunity" has been defined as "[t]he chance to buy or lease either a going business, or a product, service, or equipment that will enable the buyer or lessee to profit." Black's Law Dictionary (12th ed. 2024). The essential question in corporate opportunity actions is "whether the fiduciary has appropriated something for himself that, in all fairness, should belong to the corporation." (Internal

16

quotation marks omitted.) *DePodesta*, 2021 IL 125733, ¶ 47 (quoting *In re Trim-Lean Meat Products, Inc.*, 4 B.R. 243, 247 (Bankr. D. Del. 1980)).

¶ 52　　　　Here, by seeking and accepting an offer to work for Northwestern as an employee, Elizabeth did not appropriate any business for herself. Northwestern's business was never going to become Elizabeth's to own; she merely intended to become an employee. Therefore, the corporate opportunity doctrine does not alter our conclusion that count II was properly dismissed.

¶ 53　　　　　　　　C. Count III – Tortious Interference with Prospective Economic Advantage

¶ 54　　　　CHP next alleges that it pled sufficient facts to support a claim for tortious interference with a prospective economic advantage.

¶ 55　　　　To adequately plead a claim for tortious interference with a prospective economic advantage, a plaintiff must allege

> "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." (Internal quotation marks omitted.) *Younge v. Berman*, 2025 IL App (2d) 240354, ¶ 20 (quoting *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 300-01 (2001)).

A plaintiff must allege more than the fact that the defendant interfered with a business expectancy; "the plaintiff must instead allege that the defendant acted intentionally with the purpose of injuring the plaintiff's expectancy." (Internal quotation marks omitted.) *Younge*, 2025 IL App (2d) 240354, ¶ 20 (quoting *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 219 (2007)). An allegation of some impropriety on the

17

defendant's part is necessary to sustain a cause of action. *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, ¶ 36.

¶ 56        Because it is dispositive, we move directly to the third element—intentional and unjustified interference with a business expectancy. To this, the amended complaint alleged that Elizabeth knew of CHP's interest in and business relationship with Northwestern, as well as CHP's attempts to protect its relationship with Northwestern through the agreements; Elizabeth was warned that her employment with Northwestern would violate the agreements; Elizabeth "knowingly and unjustifiably engaged in activities in violation of her agreements," including soliciting and accepting employment from Northwestern to provide the same case management services CHP provided; and Northwestern terminated CHP's case management services shortly thereafter.

¶ 57        Even accepting CHP's allegations as true, the complaint lacks any support for the conclusion that Elizabeth's conduct was motivated by an intention or desire to injure CHP's relationship with Northwestern. Merely violating a contract, as alleged by CHP, does not, without more, demonstrate an intention to interfere in CHP's business relationship. To the contrary, the only indicator of intent that appears in the record is Elizabeth's letter of resignation to CHP that reveals a much different motivation behind her conduct: she was pursuing "personal growth and advancement" and the "flexibility to spend more time with [her] family and assist with volunteer activities." We therefore affirm the court's dismissal of count III.

¶ 58                                    D. Count IV – Civil Conspiracy

¶ 59        CHP next argues that its claim for civil conspiracy was improperly dismissed, as it alleged all of the necessary elements.

¶ 60        A claim for civil conspiracy must contain allegations establishing: "(1) an agreement to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means;

18

(2) a tortious act committed in furtherance of that agreement; and (3) an injury caused by the defendant." *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 49. The agreement is a "necessary and important element." (Internal quotation marks omitted.) *Redelmann*, 375 Ill. App. 3d at 924 (quoting *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 134 (1999)). It must be alleged that the defendant knowingly and voluntarily participated. *Redelmann*, 375 Ill. App. 3d at 924. A defendant will be liable if he understood the general objectives of the conspiracy, accepted them, and agreed to do his part to further them. *Id.* "A conspiracy, by its very nature, is secretive; therefore, the agreement is rarely susceptible to direct proof." *Reuter v. MasterCard International, Inc.*, 397 Ill. App. 3d 915, 927-28 (2010). Notwithstanding, Illinois is a fact-pleading jurisdiction and requires sufficient facts to bring a claim within the cause of action asserted. *Id.* at 928. "Conclusory allegations that the defendants agreed with others to achieve some illicit purpose are not sufficient." *Id.*

¶ 61        In paragraph 25 of the amended complaint, which was incorporated by reference into count IV, CHP alleged, "*Upon information and belief*, Ms. Onwuema and Ms. Vandenberg were made aware of the existence of [Elizabeth's] *** Noncompetition Agreement." (Emphasis added.) However, paragraph 49 (within count IV) stated unequivocally that Elizabeth advised Onwueme and Vandenberg both that she had signed the noncompetition agreement and that her hire at Northwestern would violate its terms. CHP continued that, notwithstanding, Elizabeth, Onwueme, and Vandenberg formed an agreement that Elizabeth would be hired as a case manager and that Northwestern would terminate CHP's program. As a result, CHP was damaged.

¶ 62        We begin with CHP's allegation in paragraph 25 of the amended complaint made upon information and belief that Northwestern or its employees were aware of the agreements between the parties. Our supreme court has recognized that "An allegation made on information and belief

19

is not equivalent to an allegation of relevant fact [citation], but at the pleading stage a plaintiff will not have the benefit of discovery tools" to confirm certain facts. (Internal quotation marks omitted.) *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40 (quoting *Whitley v. Frazier*, 21 Ill. 2d 292, 294 (1961)). Accordingly, a complaint containing allegations that are based upon plaintiff's information and belief can "survive dismissal if the plaintiff sufficiently pleads the factual basis informing his belief." *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 32. Stated otherwise, where necessary facts are outside the scope of the plaintiff's direct knowledge, he must allege how he discovered the facts or formed his belief as to the existence of the facts. See *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 2016 IL App (1st) 150128, ¶ 34, *rev'd in part on other grounds*, 2018 IL 120951.

¶ 63    Given the nature of a conspiracy, it is understandable that, at the pleading stage, CHP would not yet have all the information regarding the extent of Northwestern's knowledge of the agreements between the parties. However, CHP failed to compensate for this lack of direct knowledge by explaining how it formed its belief or learned of Northwestern's knowledge; instead, it merely provided a conclusory statement that Northwestern was aware of the agreements and its terms. Such allegations cannot survive dismissal. *Antonacci*, 2015 IL App (1st) 142372, ¶ 32 (affirming dismissal where plaintiff's allegation "upon information and belief" of defamatory statements made by defendant were unsupported by facts specifying what was said, how the statements were made, or when the statements were made); *cf. Bogenberger*, 2016 IL App (1st) 150128, ¶ 34 (holding that the use of "upon information and belief" did not render the allegations insufficient where the complaint was supported by an affidavit explaining that the allegations were based upon plaintiff's "reading of various summary reports, recorded witness statements and media reports").

¶ 64 Turning to CHP's additional allegations, although not prefaced by the phrase "upon information and belief," CHP's allegations that Elizabeth, Onwueme, and Vandenberg formed an agreement that Elizabeth would be hired as a case manager in violation of the noncompetition agreement and that Northwestern would thereafter terminate CHP's program are similarly unsupported. The complaint does not contain any factual allegations that Elizabeth, who was still CHP's employee, was aware of or participated in Northwestern's business decision to terminate CHP's program upon Elizabeth's acceptance of its employment offer. "Conclusory allegations that the defendants agreed with others to achieve some illicit purpose are not sufficient." *Reuter*, 397 Ill. App. 3d at 928. We therefore affirm the court's dismissal of count IV.

¶ 65 III. CONCLUSION

¶ 66 The judgment of the circuit court of Du Page County is affirmed.

¶ 67 Affirmed.